Cheryl Burbach (Kansas Bar. No. 23592)
C. Blair Barbieri (Kansas Bar. No. 27090)
HOVEY WILLIAMS
10801 Mastin Street, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210

Attorneys for Plaintiff
SOCIAL HOUSE, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | |
|---|---|
| SOCIAL HOUSE, INC., a California corporation;<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SOCIAL HOUSE ENTERTAINMENT, LLC, a Kansas limited liability company;<br><br>　　　　　Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) FEDERAL SERVICE MARK INFRINGEMENT UNDER 15 U.S.C. § 1114;**<br>**(2) FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a);**<br>**(3) FEDERAL SERVICE MARK DILUTION UNDER 15 U.S.C. § 1125(c);**<br>**(4) COMMON-LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SOCIAL HOUSE, INC. ("Plaintiff"), through its undersigned counsel, brings this action against Defendant SOCIAL HOUSE ENTERTAINMENT, LLC ("Defendant"). Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for trademark violations based on Defendant's use of SOCIAL HOUSE, Plaintiff's registered trademark, as the salient element of its own term SOCIAL HOUSE ENTERTAINMENT ("Defendant's Mark") to promote services that overlap with and compete with Plaintiff's services.

2. Plaintiff herein asserts claims for federal service mark infringement under 15 U.S.C. § 1114(a); federal unfair competition under 15 U.S.C. § 1125(a); and unfair competition under Kansas common law, all arising from Defendant's unauthorized use of SOCIAL HOUSE ENTERTAINMENT in connection with the marketing, advertising, promotion, offering for sale, and sale of Defendant's event marketing, promotion, production, and booking services.

3. Plaintiff owns two federally registered, incontestable trademarks for SOCIAL HOUSE ("the Social House Marks") in connection with social media and marketing consulting services (Reg. Nos. 4591018 and 4683419). These registrations, which issued in 2014 and 2015, respectively, are based on Plaintiff's continuous use of the Social House Marks in commerce since at least as early as 2011.

4. Defendant owns a later-registered mark, issued April 29, 2025, for SOCIAL HOUSE ENTERTAINMENT in connection with special event promotion and event production/booking services (Reg. No. 7776047). Defendant also has a pending federal trademark application (Ser. No. 98672379) for the same mark in connection with the same services, with an added design element.

5. Both filings state that Defendant has used the mark in commerce since 2020, **nine years after** Plaintiff began using the Social House Marks.

6. Plaintiff alleges that SOCIAL HOUSE ENTERTAINMENT is confusingly similar to the Social House Marks—particularly when used by Defendant in connection with services similar to and overlapping with Plaintiff's services.

7. Defendant's Mark is detrimental to the goodwill that Plaintiff has developed in the Social House Marks over nearly 15 years to identify Plaintiff as the source of high-quality social media and marketing strategy consulting services.

8. Based on the facts alleged herein, Plaintiff seeks cancellation of Defendant's Reg. No. 7776047 and Ser. No. 98672379.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. sections 1331, 1338(a), 1338(b), and 1367(a) and under 15 U.S.C. sections 1117, 1125(a), and 1125(c), because this action involves substantial claims arising under the Lanham Act.

10. This Court has supplemental jurisdiction over Plaintiff's common-law claims under 28 U.S.C. section 1367(a).

11. This Court has personal jurisdiction over Defendant because Defendant is a limited liability company organized in and principally based in Kansas.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

13.     Plaintiff is a California corporation with its principal place of business in Los Angeles, California.

14.     Based on information and belief, Defendant is a Kansas limited liability company with its principal place of business in Overland Park, Kansas.

## PLAINTIFF AND ITS SOCIAL HOUSE MARKS

15.     Plaintiff owns two incontestable trademark registrations for SOCIAL HOUSE, which have achieved national recognition from continuous use since 2011.

16.     Plaintiff owns a federal trademark registration for SOCIAL HOUSE (Reg. No. 4591018), registered since Aug. 26, 2014 in connection with: marketing, advertising and marketing and strategy consulting in the field of social media services.

17.     Plaintiff secondly owns SOCIAL HOUSE (Reg. No. 4683419), registered since Feb. 10, 2015 in connection with: consulting services regarding usage of social media tools and social media outlets in related to marketing; consulting services regarding social media strategy, promotion creation and implementation in the field of marketing; consulting services regarding metrics and analysis in the field of marketing; online social media representative public relations agency services; media monitoring, namely, monitoring of blogs, social networks, and online forums for business marketing purposes; consulting services relating to business management.

18.     Through business success and media exposure, Plaintiff has built a strong reputation for helping businesses utilize effective marketing, advertising, and social media campaigns for better business outcomes.

19. Over the years, Plaintiff and its founders have been featured in print media, podcasts, and on television. The company has been featured as a leader in the business branding industry in publications such as Voyager LA Magazine and GritDaily.

20. Plaintiff has also been highlighted on a number of podcasts, including Where There's a Will and Women in Motion. In 2019, Plaintiff's CEO was interviewed on NASDAQ's Trade Talks, a live television show, regarding social media ad strategy.

21. Over the years, Plaintiff has received a number of awards for its achievements in the brand strategy and social media consulting field, including a Vega Digital Award in 2023. The Vega Digital Awards is an awards program recognizing exemplary digital product creators nationally and internationally.

22. Recently, in 2025, Plaintiff was recognized by Women We Admire, an organization recognizing successful female-led businesses across the nation. Social House's CFO as named as among Women We Admire's top female business leaders in 2025.

23. Also in 2025, Plaintiff was recognized as one of the *Inc. 5000* Fastest Growing Companies. The *Inc. 5000* is a prestigious annual ranking that identifies and honors the fastest growing privately held companies in the United States, reflecting both substantial revenue growth and sustained business performance.

24. From industry recognition, widespread media visibility, and nearly 15 years of use in commerce, Plaintiff's Mark is widely recognized by the consuming public of the United States as a designation of source for Plaintiff's services.

## PROSECUTION HISTORY OF DEFENDANT'S INFRINGING MARK

25. On or around March 1, 2020, Defendant began offering event marketing and promotion services, as well as event production and booking services, under the name Social House Entertainment.

26. In July 2024, Defendant filed two federal trademark applications for SOCIAL HOUSE ENTERTAINMENT, both in connection with: event promotion and marketing services; entertainment services, namely, event production and booking services (Ser. Nos. 98672382 and 98672379).

27. In October 2024, Ser. No. 98672382 received a non-final office action stating the Examiner's concern about a likelihood of confusion between Defendant's Mark and the Social House Marks.

28. The Examiner noted that SOCIAL HOUSE and SOCIAL HOUSE ENTERTAINMENT create a similar overall commercial impression because their dominant features are identical—particularly considering the descriptive nature of "Entertainment," the only differentiating feature of Defendant's Mark. (Non-Final Office Action, Ser. No. 98672382, pp. 4-5 (Oct. 3, 2024).)

29. The Examiner also noted that the parties' respective services would create a likelihood of confusion amongst consumers since the parties' business and entertainment services may emanate from a single source under a single mark. (Non-Final Office Action, Ser. No. 98672382, p. 5 (Oct. 3, 2024).)

30. Based on the Examiner's concerns, Defendant amended the services for both trademark applications to expressly exclude marketing services:

"special event promotion, not to include business management consulting, marketing metrics and analysis consulting, or social media marketing and consulting services for others; entertainment services, namely, event production and booking services, not to include providing information via a website on entertainment or the arts."

31.     Based upon the amended services, the Examiner allowed both applications to be published for opposition. Plaintiff first learned of Defendant's existence when the marks first published for opposition on March 11, 2025.

32.     Defendant's word-only application (Ser. No. 98672382) registered on Apr. 29, 2025 as Reg. No. 7776047.

33.     Defendant's second application (Ser. No. 98672379), currently pending with the USPTO, consists of the phrase SOCIAL HOUSE ENTERTAINMENT with a stylized design, as depicted below:



**OVERLAP BETWEEN PLAINTIFF'S AND DEFENDANT'S SERVICES**

34.     As stated in Defendant's trademark applications, Defendant offers special event promotion services. Plaintiff offers promotional services for a variety of purposes, including event promotion.

35. As stated in Defendant's trademark applications, Defendant offers event production and booking services. Because Plaintiff already serves event producers by offering event promotion services, event production and booking services are within Plaintiff's zone of natural expansion such that Defendant's services and Plaintiff's services could be expected to originate from the same source.

36. Although Defendant's trademark applications no longer refer to event promotion and marketing services, Defendant still offers these services in practice, creating clear conflict with the Social House Marks.

37. On January 8, 2025, Defendant formally petitioned the USPTO Examiner to remove event promotion and marketing services from the scope of the two applications. Based on this modification, the Examiner permitted both applications to proceed forward.

38. However, as of July 15, 2025, Defendant's website [www.socialhousenentertainment.com](www.socialhousenentertainment.com) still advertised event marketing, event branding, and graphic design services—all of which directly compete with Plaintiff's services. (See Exhs. A-D.)

39. On July 16, 2025, Plaintiff filed a Notice of Opposition with the Trademark Trials and Appeals Board, formally contesting the registrability of Defendant's Ser. No. 98672379. In response, Defendant wiped all references to event marketing, event branding, and graphic design services from its website. (See Exhs. A-D.)

40. Plaintiff believes that Defendant knowingly modified its website to reduce the appearance of conflict between the parties' services in light of the fact that a formal challenge to Ser. No. 9867279 had been filed.

41. Notwithstanding the recent changes to Defendant's website, Plaintiff alleges on information and belief that Defendant still offers event marketing, event branding, and graphic

design services to its clients.

42. As Plaintiff specializes in event marketing and event branding, including graphic design, there is a high degree of overlap between the services offered by Plaintiff and Defendant.

## COUNT ONE

## Federal Service Mark Infringement

## 15 U.S.C. § 1114(1)(a)

43. Plaintiff restates and realleges the preceding paragraphs, as if fully set forth herein.

44. Plaintiff owns two incontestable federal trademark registrations on the Principal Register for SOCIAL HOUSE (Reg. No. 4591018 and 4683419), issued Aug. 28, 2014 and Feb. 10, 2015, respectively.

45. Plaintiff's registrations serve as prima facie evidence of the validity of the Social House Marks, of Plaintiff's ownership of the marks, and of Plaintiff's exclusive right to use the marks in commerce in connection with the registered services. 15 U.S.C. § 1057(b).

46. Plaintiff has used the Social House Marks in commerce since at least as early as 2011. Meanwhile, Defendant adopted the term SOCIAL HOUSE ENTERTAINMENT on or around Mar. 1, 2020.

47. Plaintiff's use of the Social House Marks predates Defendant's use of Defendant's Mark, giving Plaintiff priority of use and the entitlement to exclude confusingly similar marks.

48. Defendant's Mark is a colorable imitation of a federally registered trademark used by Defendant in connection with the sale, offering for sale, distribution, or advertising of services

in a manner likely to cause confusion, or to cause mistake, or to deceive consumers.

49. The degree of similarity between the two marks weighs in favor of likelihood of confusion.

50. As noted by the Examiner in her initial review of Defendant's trademark applications, the Social House Marks and Defendant's Mark have a similar overall commercial impression, weighing towards likelihood of confusion.

51. Defendant's Mark appropriates SOCIAL HOUSE in its entirety, merely adding the term "Entertainment," which is non-distinctive and insufficient to meaningfully differentiate the parties' marks, for "Entertainment" is descriptive as used in Defendant's Mark, as Defendant provides entertainment-related services.

52. Defendant's addition of "Entertainment" to the end of SOCIAL HOUSE is deceptive because many brands eventually create sub-brands by adding a new term to the end of the primary brand name—for example, GAP KIDS as a sub-brand of GAP (clothing brand). Confusion is likely to occur because the public could similarly perceive SOCIAL HOUSE ENTERTAINMENT as Plaintiff's entertainment-based sub-brand, a common branding strategy that exacerbates the risk of consumer confusion.

53. The design element of Ser. No. does not meaningfully differentiate the parties' marks, as consumers pay more attention to the literal portion of a mark as a source identifier.

54. The similarity of the parties' respective services and target audiences weighs in favor of likelihood of confusion.

55. As noted by the Examiner in her initial review, the parties provide related, overlapping services that are reasonably attributable to a common source, thus weighing toward likelihood of confusion.

56. Defendant's applications claim special event promotion services, directly overlapping with Plaintiff's event promotion services.

57. Defendant also offers event marketing, event branding, and graphic design services that are not claimed in Defendant's trademark applications and that directly overlap with Plaintiff's event marketing, event branding, and graphic design services.

58. In spite of what is stated in Defendant's applications, Defendant in practice offers both marketing services and event production/booking services—showing that these types of services are in fact likely to originate from a common source as the USPTO Examiner originally concluded. As a result, Plaintiff's marketing services and Defendant's event production/booking services are considered to be related for likelihood of confusion purposes.

59. Increasing the likelihood of confusion, there is overlap between the parties' existing clientele because Defendant's primary clientele is event producers, which are a subset of Plaintiff's clientele.

60. Defendant's intent in adopting and continuing to use Defendant's Mark weighs in favor of likelihood of confusion.

61. Given the high degree of similarity between the parties' marks and the services offered thereunder, Defendant knew—or should have known through the exercise of reasonable diligence—of the existence Social House Marks at the time when Defendant adopted Defendant's Mark.

62. Defendant had actual knowledge of the Social House Marks as of Oct. 3, 2024, at the very latest. Defendant received a non-final office action on Oct. 3, 2024 that cited the Social House Marks as a basis for refusal of registration.

63. Defendant has known of Plaintiff's dissatisfaction with the trademark infringement

since May 13, 2025, when Plaintiff sent Defendant a cease and desist letter that demanded no money and simply asked Defendant to cease use of Defendant's Mark. Defendant refused, prompting this litigation.

64. In spite of Defendant's actual knowledge of the Social House Marks for at least 11 months, and its actual knowledge of Plaintiff's discontent with the infringement for at least four months, Defendant continues to knowingly use Defendant's Mark in connection with overlapping and related services.

65. Defendant's knowing intentional conduct constitutes willful infringement.

66. In totality, the relevant likelihood of confusion factors— including the similarity of the marks, the overlap in services and clientele, the defendant's intent, and the plaintiff's potential for expansion—indicate a strong likelihood of confusion as to the source, sponsorship, or approval of the parties' respective services.

67. In addition to causing public confusion, Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff's goodwill and reputation. Unless enjoined by this court, Plaintiff has no adequate remedy at law.

68. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

69. Plaintiff is further entitled to enhanced damages and profits due to Defendant's willful infringement.

70. The Court also may cancel Defendant's Reg. No. 7776047 and deny registration for Ser. No. 98672379 under 15 U.S.C. § 1119.

## COUNT TWO

## Federal Unfair Competition

## 15 U.S.C. § 1125(a)

71. Plaintiff restates and realleges the preceding paragraphs, as if fully set forth herein.

72. Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's services originate from, are associated, or affiliated with, or otherwise authorized by Plaintiff and vice versa.

73. Defendant's conduct as alleged herein is causing immediate and irreparable harm to Plaintiff's goodwill and reputation. Unless enjoined by this court, Plaintiff has no adequate remedy at law.

74. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

75. Plaintiff is further entitled to enhanced damages and profits due to Defendant's willful infringement.

76. The Court also may cancel Defendant's Reg. No. 7776047 and deny registration for Ser. No. 98672379 under 15 U.S.C. § 1119.

## COUNT THREE

### Federal Service Mark Dilution

### 15 U.S.C. § 1125(c)

77. Plaintiff restates and realleges the preceding paragraphs, as if fully set forth herein.

78. The Social House Marks are widely recognized by the general consuming public of the United States as a designation of the source of Plaintiff's social media and marketing consulting services.

79. The Social House Marks are nationally famous as the product of Plaintiff's extensive nationwide advertising efforts.

80. Plaintiff and the Social House Marks have also received considerable publicity from third-party sources, including print publications, podcasts, and industry awards organizations.

81. The Social House Marks are nationally famous as the product of Plaintiff's high volume of clientele spanning the entire country and representing a broad range of industries.

82. There is strong actual recognition of the Social House Marks as the result of Plaintiff's own advertising efforts and public accolades from third-party organizations, combined with Plaintiff's strong client and industry relationships.

83. Plaintiff's ownership of two federal registrations on the Principal Register further evidences the fame of the Social House Marks.

84. The Social House Marks have been nationally famous since before Defendant adopted Defendant's Mark.

85. Defendant's Mark is likely to cause dilution by blurring or dilution by tarnishment

of the Social House Marks.

86. Defendant's Mark is likely to cause dilution by blurring by impairing the distinctiveness of the Social House Marks.

87. Dilution by blurring is likely because Defendant's Mark is visually similar to the Social House Marks and the parties' services offered thereunder are also highly similar.

88. Dilution by blurring is likely because the Social House Marks are highly distinctive and have a high degree of public recognition from nearly 15 years of use in commerce by Plaintiff, who is the substantially exclusive user of the mark.

89. Dilution by blurring is likely based on Defendant's actual intent to create an association with the Social House Marks, evidenced by Defendant's failure to discontinue using Defendant's Mark despite warnings from both Plaintiff and the USPTO that there is an association between Defendant's Mark and the Social House Marks.

90. The trademark Examiner's identification of the Social House Marks as potentially conflicting with Defendant's Mark shows that there is actual association between the two marks.

91. Defendant's Mark is likely to cause dilution by tarnishment because Plaintiff lacks control over the quality and content of the festivals, concerts, and other live events produced by Defendant. The public controversy that can arise from live events, based on subject matter or event production mishaps, creates a particular risk of reputational harm to Plaintiff, which Plaintiff wishes to be disassociated from.

92. Plaintiff is entitled to an injunction forbidding Defendant's use of Defendant's Mark because such use creates a likelihood of dilution by blurring or by tarnishment.

## COUNT FOUR

### Common-Law Unfair Competition

93. Plaintiff restates and realleges the preceding paragraphs, as if fully set forth herein.

94. Under Kansas law, unfair competition arising from trademark infringement requires proof that the plaintiff owns a protectable, distinctive service mark and that the defendant's use of the mark is likely to cause consumer confusion. *Triple-I Corp. v. Hudson Assocs. Consulting*, 713 F. Supp. 2d 1267, 1286 (10th Cir. 2010).

95. The Social House Marks are presumptively valid pursuant to 15 U.S.C. § 1057(b) because Plaintiff owns two federally registered, incontestable trademark registrations for SOCIAL HOUSE (Reg. Nos. 4591018 and 4683419).

96. By virtue of industry recognition, widespread media visibility, and nearly 15 years of use in commerce, the Social House Marks are a distinctive source-identifier for Plaintiff's services.

97. Defendant's use of the infringing mark SOCIAL HOUSE ENTERTAINMENT, as alleged herein, has caused and is likely to cause confusion, mistake, and deception among the relevant consuming public as to the source, origin, sponsorship, or approval of both Plaintiff's and Defendant's services.

98. Defendant infringing acts as alleged herein are willful and designed to unfairly compete with Plaintiff by exploiting the brand reputation and goodwill that Plaintiff has developed in the Social House Marks for nearly 15 years.

99. Plaintiff is entitled to any and all remedies for unfair competition that are available under Kansas law.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that the Court enter judgement in its favor and against Defendant as follows:

(a) Enter judgment that Plaintiff owns valid and enforceable trademark rights in the service mark SOCIAL HOUSE as a source identifier for Plaintiff's services.

(b) Enter judgment that Defendant's unauthorized use of the confusingly similar term SOCIAL HOUSE ENTERTAINMENT in connection with overlapping and related services constitutes infringement of federally registered trademarks in violation of 15 U.S.C. section 1114(1)(a);

(c) Enter judgment that Defendant's unauthorized use of the confusingly similar term SOCIAL HOUSE ENTERTAINMENT in connection with overlapping and related services constitutes federal unfair competition in violation of 15 U.S.C. section 1125(a);

(d) Enter judgment that Defendant's unauthorized use of the confusingly similar term SOCIAL HOUSE ENTERTAINMENT in connection with overlapping and related services constitutes federal service mark dilution in violation of 15 U.S.C. section 1125(c);

(e) Enter judgment that Defendant's unauthorized use of the confusingly similar term SOCIAL HOUSE ENTERTAINMENT in connection with overlapping and related services constitutes unfair competition under Kansas common law;

(f) Order the U.S. Commissioner of Trademarks to invalidate Defendant's Registration Number 7776047 and deny registration for Defendant's Serial Number 98672379.

(g) Permanently enjoin and restrain Defendants, along with its agents, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them, from using the term SOCIAL HOUSE ENTERTAINMENT—alone or in combination with other words or symbols—as a service mark, trade name component, or otherwise, to market, advertise, distribute, or identify Defendant's products or services through any and all channels, including print, digital, and social media channels;

(h) Enter an order requiring Defendant to immediately discontinue using the domain name www.socialhouseentertainment.com;

(i) Pursuant to 15 U.S.C. section 1116(a), direct Defendant to file with the Court and serve on Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant complied with the injunction;

(j) Pursuant to 15 U.S.C. section 1118, require Defendant and all others acting under Defendant's authority, at their cost, to deliver and destroy all devices, literature, advertising, labels, and other material in their possession bearing the infringing service mark;

(k) Award Plaintiff all damages sustained as the result of Defendant's acts of infringement and unfair competition, together with prejudgment interest, pursuant to 15 U.S.C. section 1117;

(l) Award Plaintiff its attorneys' fees and costs pursuant to 15 U.S.C. section 1117, or as otherwise allowed by law;

(m) Award Plaintiff punitive damages; and

(n) Grant Plaintiff additional, other or further relief as the Court deems proper.

Dated: September 22, 2025   Hovey Williams

            Respectfully Submitted,

            s/ ***Cheryl L. Burbach***
            Cheryl L. Burbach, KS State Bar. No. 23592
            C. Blair Barbieri, KS State Bar. No. 27090
            cburbach@hoveywilliams.com
            bbarbieri@hoveywilliams.com
            Hovey Williams LLP
            10801 Mastin Boulevard, Suite 1000
            Overland Park, Kansas 66210
            (913) 647-9050   Fax: (913) 647-9057

            Attorneys for Plaintiff